# LEE LITIGATION GROUP, PLLC
148 WEST 24TH STREET, EIGHTH FLOOR
NEW YORK, NY 10011
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:   212-465-1188
cklee@leelitigation.com

July 6, 2023

**VIA ECF**
The Honorable Sarah Netburn, U.S.M.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re: *Caicedo v. The Anthem Companies, Inc.*
        Case No. 1:21-cv-05642

Dear Judge Netburn:

  We are counsel to Plaintiff and write, jointly with counsel to Defendant, to respectfully request that the Court approve the parties' settlement agreement as fair. Attached hereto as **Exhibit A** please find the parties' Settlement Agreement and Release of Claims (the "Settlement Agreement").

  The court in *Wolinsky* sets forth the following criteria for determining whether a proposed settlement is fair and reasonable:

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted).

  The parties participated in a mediation with Theo Chang, Esq. on April 21, 2023 at which they reached a settlement in principle for $25,000. Following mediation, the parties continued to negotiate the terms of the settlement, which were memorialized in the Settlement Agreement, executed on July 6, 2023. Based on the above criteria, the agreement is fair and reasonable and should be approved by the Court.

**Plaintiff's Range of Possible Recovery**

Pursuant to the Settlement Agreement, Defendant has agreed to pay the total of $25,000 to Plaintiff Eugenia Caicedo, $15,000 of which represents the settlement amount to be allocated to Plaintiff and $10,000 of which is allocated to Plaintiff's counsel's costs and expenses ($6,685), and legal fees ($3,315).

Plaintiff originally calculated liability of approximately $295,331.40 were she to prevail on all of her FLSA claims (See **Exhibit B**). Defendant denied these claims from the outset of the case, maintaining all along (and still today) that it properly classified Plaintiff as exempt from the FLSA's overtime requirements and is not entitled to any recovery whatsoever.

Ultimately, due to the risks associated with continuing to litigate this "all or nothing" exemption case—and, for Defendant, due to the cost, time, and business distraction associated with continued litigation through its anticipated summary judgment motion—the parties each believe the settlement reached is fair and reasonable. Based on information that they have learned throughout the litigation, including at mediation, Plaintiff and her counsel believe that the settlement amount represents over 100% of what Plaintiff may be owed on her FLSA claims.

That this is an "all or nothing" case for Plaintiff—meaning a case where an unfavorable outcome on a single legal question (i.e., exemption) would destroy Plaintiff's entire case—is critical. In such cases, courts (like plaintiffs) should, due to the heightened litigation risks, accept a substantial "discount" on a plaintiffs' maximum potential recovery. *In re Gen. Motors Corp.*, 55 F.3d 768 at 806. The settlement involving global healthcare company Novartis, and subsequent U.S. Supreme Court decision, underscores the greater-than-usual litigation risks associated with "all or nothing" exemption cases.

In early 2012, Novartis reached a multi-million dollar settlement of claims brought by its current and former pharmaceutical sales representatives who claimed they were misclassified as exempt from federal and state overtime pay requirements. Novartis maintained that the plaintiffs were properly classified under one or more overtime exemptions, including the outside sales exemption. Like this case, if Novartis's sales representatives were properly classified, then the plaintiffs could not recover any damages. Ultimately the parties settled after the U.S. Supreme Court had agreed to consider—but before it decided—a separate case involving the same issue, i.e., whether the outside sales exemption exempts pharmaceutical sales representatives from overtime pay requirements. *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012).

Several months after the Novartis settlement was announced, the Supreme Court concluded in *Christopher* that pharmaceutical sales representatives are indeed exempt from the FLSA's overtime requirements pursuant to the outside sales exemption and thus are not entitled to overtime pay. The plaintiffs in *Christopher* were therefore left with no recovery.

For Plaintiff, *Christopher* serves as an important reminder of the heightened risk associated with "all or nothing" litigations. Had the decision been issued several months earlier, the Novartis plaintiffs and their counsel would likely have been left with no recovery instead of a settlement. Notwithstanding Plaintiff's "best case" scenario estimates, Defendant has fiercely maintained that she was properly classified as exempt and, thus, not entitled to any recovery whatsoever. And if

this Court (or, if necessary, an appellate court) ruled in Defendant's favor, Plaintiff would be left with nothing. For this reason alone, the parties' negotiated settlement is fair and reasonable.

Based on the documents produced and the discussions at mediation, Plaintiff believes that should this case proceed, proving her FLSA claims would be extremely risky and she may end up empty handed.

**The Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses and The Parties Face Serious Litigation Risks**

There is no logical reason for Plaintiff to continue with this litigation, as it is very unlikely that Plaintiff could possibly recover a greater amount than she is receiving through the settlement. As described above, this is an "all or nothing" case that turns on an exemption. Without disclosing anything discussed during mediation, following document exchange and mediation, the parties believe it would be extremely difficult for Plaintiff to prove her claims at trial. The burdens and expenses of trial are unnecessary and would only increase the Plaintiff's legal fees, without increasing the amount due to Plaintiff. In fact, continuing the litigation and proceeding to trial would be highly risky to Plaintiff. Plaintiff believes the amount she is receiving from the settlement is a fair result.

**The Settlement is a Result of Arm's-Length Negotiation and There is No Possibility of Fraud or Collusion**

The proposed settlement is fair and reasonable because Plaintiff and Defendant were represented by competent and experienced counsel during the litigation and settlement process. There was an exchange of relevant documents and an open sharing of facts and information. The parties negotiated vigorously and were able to reach an agreement during a mediation with experienced and well qualified mediator Theo Cheng, Esq.

**The Attorneys' Fees are Fair and Reasonable**

Pursuant to the settlement, Plaintiff's counsel is to receive $10,000.00. Plaintiff's counsel represents that it has incurred a lodestar of over $50,000[1] litigating this case, the total of which is much greater than the amount being paid to Plaintiff's counsel under the Settlement Agreement. Plaintiff further represents that costs alone total $6,685 (See **Exhibit C**, Costs Breakdown), making the attorneys' fees portion only $3,315, or 15% of the total settlement.

Plaintiff's counsel represents that it has invested significant time and resources into litigating this matter vigorously. Plaintiff agreed, upon retaining Plaintiff's counsel, that her counsel may receive a percentage of the full settlement amount negotiated or their lodestar. In settling this matter for $25,000, Plaintiff's counsel agreed to receive a reduced amount, amounting to only a small percentage of their lodestar, in order to resolve the matter.

---

[1] Should the Court so require, Plaintiff's counsel can submit time records in support.

      Plaintiff represents and maintains—and Defendant does not oppose—that her counsel's fees and costs of $10,000.00 are fair and reasonable given that their lodestar exceeds such amount. Such work done by Plaintiff's counsel includes interviewing the Plaintiff, investigating the identity of Defendants, preparing a Complaint, preparing damages calculations, a Rule 26 call, preparing a submission for the initial conference, preparing for and attending the initial conference, preparing discovery requests, motion practice, correspondence, negotiating with Defendants' counsel, preparing damage calculations, preparing for and attending mediation, preparing and revising the settlement agreement, and preparing and revising this submission.

      In view of the foregoing, and as agreed to by Plaintiff, Plaintiff's counsel maintains that their request of $10,000, which provides a <u>negative</u> <u>multiplier</u> on their represented lodestar of more than $50,000 (the actual fees are $3,315 because $6,685 represents actual out-of-pocket expenses incurred during litigation) should be approved. Defendant does not oppose Plaintiff's counsel's request.

      *                *                *

      As such, the parties respectfully request that the Court approve the settlement. We thank Your Honor for considering this matter.

Respectfully submitted,

*/s/ C.K. Lee*
C.K. Lee, Esq.

Encl.
cc: all parties via ECF